*In re* Brown's Estate.

Lynde-Bowman-Darby Co. v. Brown.

No. 803, Ind. T.    Opinion Filed September 12, 1908.

(97 Pac. 613.)

1.    INDIANS—Creeks—Descent and Distribution—Wills—Laws Governing.   Chapters 49, 155, Mansf. Dig. (Ind. T. Ann. St. 1899, cc. 21, 58), entitled "Descents and Distribution," and "Wills and Testaments," respectively, as modified by acts of Congress (Act May 2, 1890, c. 182, 26 Stat. 81; Act June 30, 1902, c. 1323, 32 Stat. 500) were in force in the Creek Nation on the 13th day of November, 1905.

2.    SAME—Rights of Pretermitted Child.   There being no children born to a noncitizen Creek allottee after the 25th day of May, 1901, she was entitled to dispose of her homestead by will, and such devise was subject to the limitations contained in section 6500 Mansf. Dig. (Ind. T. Ann. St: 1899, sec: 3572), which reads: "When any person shall make his last will and testament, and omit to mention the name of a child, if living, or the legal representatives of such child born and living at the time of the execution of such will, every such person so far as regards such child shall be deemed to have died intestate, and such child shall be entitled to such proportion, share and dividend of the estate, real and personal, of the testator as if he had died intestate; and such child shall be entitled to recover from the devisees and legatees in proportion to the amount of their respective shares, and the court exercising probate jurisdiction shall have power to decree a distribution of such estate according to the provisions of this and the preceding sections."

3.    SAME.   Where such allottee executes a will for such homestead, naming therein her husband as sole devisee, and dies leaving surviving her an only child by a former husband, born prior to the 25th day of May, 1901, such child is the sole heir of such allottee, and is entitled to the whole of her estate as if she had died intestate.

(Syllabus by the Court.)

*Appeal from the United States Court for the Western District of the Indian Territory, at Muskogee.*

The Lynde-Bowman-Darby Company filed its petition asking for a decree of distribution of the estate of Julia Brown, deceased. To

this petition, Jonas Brown, executor and sole devisee of the will of Julia Brown, deceased, interposed a demurrer, which was sustained, and petitioner appealed to the Court of Appeals of the Indian Territory, whence the cause came to the Supreme Court of the state of Oklahoma, under the Enabling Act and Schedule of the Constitution. Reversed, and decree entered.

*C. L. Thomas* and *Edgar A. DeMeules,* for appellant.
*Harry G. Davis* and *Myron White,* for appellee.

KANE, J. The appellant herein, petitioner below, on the 21st day of August, 1906, filed its petition asking for a decree of distribution of the estate of Julia Brown, deceased, wherein it was alleged, in effect, that Julia Brown, deceased, was a duly enrolled citizen of the Creek Nation, not of Indian blood; that on or about the 13th day of November, 1905, she died, seised of 40 acres of land in the Creek Nation, the same being that part of her allotment set apart to her as her homestead; that she left surviving her a husband, Jonas Brown, a noncitizen, and Sam Brown, an only child, born of a former marriage, who at the time of her death was about 45 years of age and a duly enrolled citizen of the Creek Nation. not of Indian blood; that there was no issue born to said Jonas Brown and Julia Brown. On the 20th day of November, 1905, the said Sam Brown and his wife, Jennie Brown, executed and delivered to the Iowa Land & Trust Company a warranty deed, conveying the lands above described, and thereafter, on the 7th day of May, 1906, the Iowa Land & Trust Company executed and delivered a warranty deed conveying the same land to the appellant, Lynde-Bowman-Darby Company. On or about the 26th day of July, 1906, an instrument purporting to be the last will and testament of the said Julia Brown, deceased, was duly and regularly admitted to probate by the United States Court, sitting in probate at Muskogee, Ind. Ter.; that according to the terms of said will and testament Julia Brown gave and bequeathed said land to Jonas Brown; that in said last will and testament

the name of Sam Brown, the only child of the said Julia Brown, was not mentioned, and no provision was made therein for him.

Upon the foregoing facts appellant prayed for a decree declaring that the said Julia Brown be deemed to have died intestate as regards the said Sam Brown, and for a decree giving to the said Sam Brown, the petitioner, such proportion and share of the above-described lands as the said Sam Brown would have been lawfully entitled to, had the said Julia Brown died intestate. To this petition Jonas Brown, executor and sole devisee of the will of said Julia Brown, interposed a demurrer, which demurrer was sustained by the court; and, the appellant electing to stand on its demurrer, a decree was entered dismissing its petition. From this decree the appellant prosecuted an appeal to the Court of Appeals of the Indian Territory, and the case was transferred to this court under the terms of the Enabling Act and the Schedule to the Constitution.

Counsel for appellant admits, for the sake of argument, that Julia Brown had the right and power under the law to make a valid will devising that part of her allotment in the Creek Nation set apart to her as her homestead, but contends that such a will must be governed by the provisions of chapter 155 of Mansfield's Digest of the Statutes of Arkansas, entitled "Wills and Testaments," and that by section 6500 of said chapter it is provided that:

"When any person shall make his last will and testament, and omit to mention the name of a child, if living,, * * * every such person so far as regards such child, shall be deemed to have died intestate, and such child shall be entitled to such proportion, share and dividend of the estate, real and personal, of the testator as if he had died intestate; and such child shall be entitled to recover from the devisees and legatees in proportion to the amount of their respective shares, and the court exercising probate jurisdiction shall have power to decree a distribution of such estate according to the provisions of this and the preceding sections." (Ind. T. Ann. St. 1899, c. 58 , § 3572).

Julia Brown died on the 13th day of November, 1905. She

left, surviving her, her husband, the appellee, Jonas Brown, who was not a citizen of the Creek Nation, and her son, Sam Brown, through whom appellant claims under the above-quoted sections. That chapter 155, *supra*, was extended over the Indian Territory by the act of Congress approved May 2, 1890 (26 Stat. 81, c. 182), there can be no doubt. Section 31 of the act extends over and puts in force in the Indian Territory certain chapters of Mansfield's Digest, and among them specifically mentions chapter 155, *supra*. In the case of *George v. Robb et al.*, 4 Ind. T. 61, 64 S. W. 615, Mr. Justice Clayton says:

"This case rests solely upon the determination of the question as to whether the law of Arkansas as contained in chapter 155 of Mansfield's Digest (chapter 58, Ind. T. Ann. St. 1899), relating to wills, as extended over the Indian Territory, is to be enforced in the administration of estates of citizens of the Creek Nation."

Then, after holding that the United States Courts of the Indian Territory must try the rights of the parties interested in a will according to the provisions of chapter 155, *supra*, and citing with approval the decisions of the Supreme Court of Arkansas construing said chapter, Justice Clayton further says:

"And this is certainly a proper construction of this section, supported both by reason and the weight of authority. The law does not prevent a man from disposing of his property as he may see fit; but it throws a safeguard around his children, the issue of his body, to the extent of requiring him to specifically mention their names in his final disposition of his property, so that there may be no question as to his real intent."

Counsel for appellee insists that the will under consideration in this case is taken without the operation of chapter 155, *supra*, by section 16 of the act of Congress approved June 30, 1902 (32 Stat. 503, c. 1323 , and particularly insists that the part of that section which reads: "The homestead of each citizen shall remain, after the death of the allottee, for the use of children born to him after May 25, 1901, but if he have no such issue then he may dispose of his homestead by will, free from the limitation

herein imposed, and if this be not done the land embraced in his homestead shall descend to his heirs, free from such limitation, according to the laws of descent herein otherwise prescribed"—indicates an intention on the part of Congress to enact a law of descent and distribution governing homesteads entirely different from the law governing general allotments of Creek citizens, and entirely different from any provision that may be found in Mansfield's Digest of the Laws of Arkansas. With this view of the law we cannot agree. Such a construction would bring about confusion worse confounded. If the laws of Arkansas governing "Wills and Testaments" and "Descents and Distribution" were not in force in the Creek Nation at the time of descent cast in this case, then there were no written laws governing these subjects, and the act of Congress of May 2, 1890, *supra*, putting in force chapter 155, *supra*, and the act approved June 30, 1902, *supra*, repealing the laws of descent and distribution according to the laws of the Creek Nation and substituting therefor chapter 49, *supra*, would be abortive. Such was not the intention of Congress, and the courts heretofore construing these laws have not so construed them.

In the case of *De Graffenreid v. Iowa Land & Trust Co.*, 20 Okla. 687, 95 Pac. 624, this court held:

"The provision of the Indian appropriation act, passed by Congress on May 27, 1902 (32 Stat. 258, c. 888), repealing the provisions of the said original agreement made by the Creeks in so far as it provided for descent and distribution according to the Creek law of descent and distribution, and substituting therefor chapter 49, Mans. Dig. (Ind. T. Ann. St. 1899, c. 21), did not by virtue of the joint resolution of Congress, take effect until July 1, 1902."

Applying the principles laid down in the cases of *George v. Robb et al.* and *De Graffenreid v. Iowa Land & Trust Co., supra,* we are led to the conclusion that chapters 49 and 155 of the Laws of Arkansas, as modified by the acts of Congress, were in force in the Creek Nation at the time of descent cast and were applicable to this case. To our mind section 16 of the act of Congress

*supra,* modifies the general laws of Arkansas to the exent only that the homestead after the death of the allottee must be set aside for the use of children born to him after May 25, 1901. If there are no such children the estate may be willed under the laws of Arkansas.

As in this case there were no children born to the devisor after May 25, 1901, there was no reason why she should not dispose of the land embraced in her homestead by will; but in doing so it was incumbent upon her to make provision therein for any surviving children born prior to the 25th day of May, 1901. Failing to do this, she must be deemed to have died intestate, and such surviving child is entitled to such proportion, share, and dividend, real and personal, of the estate, as if no will had been made. To determine such share resort must again be had to the laws of Arkansas. Section 6 of the act of Congress approved June 30, 1902, above referred to, provides:

"The provisions of the act of Congress approved March 1, 1901 (31 Stat. 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed, and the descent and distribution of land and money provided by said act shall be in accordance with chapter 49 of Mansfield's Digest of the state of Arkansas now in force in Indian Territory."

The first section of chapter 49, Mansf. Dig. (Ind. T. Ann. St. 1899, § 1820), provides:

"When any person shall die, having title to any real estate of inheritance, or personal estate (b) not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed, in parcenary, to his kindred, male or female, subject to the payment of his debts and the widow's dower, in the following manner: First. To children, or their descendants, in equal parts. Second. If there be no children, then to the father, then to the mother; if no mother, then to the brothers and sisters, or their descendants, in equal parts."

From the foregoing provisions it is obvious that, where there are children surviving, the husband has no inheritable interest in

the estate of his deceased wife; and, as there was no child or children born alive of his marriage with the decedent, he is not entitled to courtesy. Having reached this conclusion, it inevitably follows that Sam Brown is entitled to the same share of his deceased mother's estate as if she had died intestate, there being no other children, which, under the circumstances of this case, would undoubtedly be the whole estate. The appellant, deriving its title through Sam Brown and his assignees, was entitled to the relief prayed for.

Let the judgment of the court below be reversed, and a decree entered in conformity with this opinion.

All the Justices concur.