SKELTON v. DILL.

No. 1227.  Opinion Filed November 18, 1911.

(119 Pac. 267.)

1. APPEAL AND ERROR—Questions of Fact. Where the Creek rolls show that a woman and her deceased child are of Creek blood, and she and her husband testify to the same effect, a finding of the trial court that they are of Creek blood will not be disturbed, though a number of persons, including some relatives, testify they were adopted Creeks, and not of Creek blood.

2. ACKNOWLEDGMENT—Sufficiency. A certificate of acknowledgment, taken in another state, which stated that the maker of the instrument came before a notary public, and which was attested by the person making the certificate as chancery clerk and ex officio notary public, was sufficient to admit the instrument to record under the law in force in the Indian Territory prior to statehood.

(Syllabus by Rosser, C.)

*Error from District Court, Okfuskee County; John B. Patterson, Special Judge.*

Action by William H. Dill against L. S. Skelton and W. E. Whitman. Judgment for plaintiff, and defendant Skelton brings error. Affirmed.

*Stanford & Cochran,* for plaintiff in error.

*Martin L. Frerich,* for defendant in error.

Opinion by ROSSER, C.  This is a suit by William H. Dill, defendant in error, hereinafter called plaintiff, against L. S. Skelton, plaintiff in error, hereinafter called defendant, and W. E. Whitman, to recover certain lands described in plaintiff's ᐧ

petition. The lands were the allotment of Archie Hamby, de-deceased, who was the son of Archie H. Hamby, a noncitizen, and Dora Hamby, a member of the Creek Tribe of Indians. Archie Hamby died on the 26th of July, A. D. 1901, leaving surviving him his father, mother, three brothers, and a sister. The record is silent as to when this land was selected as his allotment, but the enrollment card shows that his enrollment was approved July 31, 1905. The deeds from the Creek Tribe to both his homestead and surplus allotments' are dated May 24, 1907.

Plaintiff claims title as follows: On the 20th of July, A. D. 1906, Dora Hamby, joined by her husband, A. H. Hamby, executed a warranty deed to the lands to S. M. Wilson. On the 28th of July, A. D. 1906, S. M. Wilson and wife conveyed by warranty deed an undivided one-half interest in the lands to the plaintiff. On the 31st of December, A. D. 1906, Samuel M. Wilson and wife conveyed their remaining interest. in the lands to Ada Smith by warranty deed. On the 18th of February, A. D. 1907, Ada Smith conveyed her interest in the lands to the plaintiff, William H. Dill, by warranty deed. The defendant W. E. Whitman filed a disclaimer as to any interest or title to the lands, and alleged that he was holding merely as tenant of the defendant L. S. Skelton.

The defendant L. S. Skelton claims title to the lands as follows: On the 2d day of September, A. D. 1905, A. H. Hamby, the father of the allottee, Archie Hamby, deceased, executed a power of attorney to H. E. P. Stanford, the first paragraph of which is as follows:

"To make, execute and deliver warranty deeds, mortgages, and releases upon my interest in the allotment of my deceased child, Archie Hamby, set aside as his approximate share of the lands of the Creek Nation of Indians in the Indian Territory."

On the same day Dora Hamby, the mother of the deceased allottee, executed and delivered to H. E. P. Stanford a power of attorney, the third paragraph of which is as follows:

"To make, execute and deliver warranty deeds, mortgages, and releases upon my interest in the allotment of my deceased,

Archie Hamby, set aside as his approximate share of the lands of the Creek Nation of Indians in the Indian Territory."

On the 13th of September, A. D. 1905, H. E. P. Stanford, acting under the powers as above set out, in the name of A. H. Hamby and Dora Hamby, executed a warranty deed to the lands to L. S. Skelton, describing A. H. Hamby as a noncitizen of the Creek Nation of Indians, and Dora Hamby as an adopted citizen of the Creek Nation of Indians, and the two as sole heirs at law of Archie Hamby, deceased. On the 1st of July, A. D. 1907, H. E. P. Stanford, as attorney in fact for A. H. Hamby and Dora Hamby, executed a warranty deed to the same lands to the defendant L. S. Skelton, upon the same consideration mentioned in the first deed. On the 12th of August, A. D. 1907, H. E. P. Stanford, acting under the power given him by A. H. Hamby, executed another general warranty deed in the name of A. H. Hamby, for the same consideration, to the defendant L. S. Skelton.

A. H. Hamby and Dora Hamby testified that Dora Hamby was of thirty-second Creek blood, and that the deceased son was one-sixty-fourth Creek. The enrollment card, which was introduced in evidence, also showed that Dora Hamby was one thirty-second Creek, and that the deceased, Archie Hamby, was one sixty-fourth.

The defendant offered in evidence the testimony of several witnesses, taken before the Commission to the Five Civilized Tribes, upon the hearing of the application of Mary E. Bowen et al. for enrollment as citizens by blood of the Creek Tribe, including that of several relatives, for the purpose of showing that Mary E. Bowen, who was Dora Hamby's grandmother, was never a member of the Creek Tribe, and that Mrs. Bowen's father's family were citizens by adoption, and not by blood. He also offered in evidence the testimony of Mary E. Bowen, who testified that her father was a quadroon Indian, but admitted that she had never drawn any money as a member of the tribe. In the course of her examination, the Commission seems to have examined various records, and to have found that her name was

not on any authenticated tribal roll of the Creek Nation, and also to have found that on July 10, 1895, the Creek Citizenship Commission rendered a judgment, rejecting her application for enrollment, because she had no Creek blood, and because she was not living with her father, Jim Gentry, at the time he and his family were adopted into the Creek Tribe. All of this testimony was objected to by plaintiff at the time it was offered.

The parties waived a jury, and submitted the issues to the court to find the law and the facts. The court found the facts as to the conveyances as stated above, and also found that the deceased, Archie Hamby, was one sixty-fourth Creek Indian, and that Dora Hamby was one thirty-second Creek, and upon these facts found that the plaintiff was entitled to recover.

Several questions are raised in the briefs of counsel in the case, and to cover all points that are or might be raised in the case would be to write a treatise upon the land laws in the Creek Nation, and also upon the rights of married women. A principal question raised in the brief of plaintiff in error is as to the blood of Dora Hamby and Archie Hamby. It is contended by the plaintiff in error that Dora Hamby and Archie Hamby, though enrolled as one thirty-second Creek Indian and one sixty-fourth Creek Indian, respectively, were, in fact, white people, and therefore, at the time of the execution of the power of attorney by Dora Hamby to H. E. P. Stanford, that their lands were not restricted, and that she had a right to convey them, and that therefore the deeds executed by H. E. P. Stanford, in the exercise of the power, were valid, and conveyed title to the defendant (plaintiff in error).

The second contention of defendant is that the allotment not having been selected, and the patents not having been issued until after the supplemental treaty took effect, that the land descended as provided in chapter 49 of Mansf. Dig. of Ark. (Ind. T. Ann. St. 1899, c. 21), and the mother, Dora Hamby, not being a Creek by blood, was postponed to the father, A. H. Hamby, and that he took either an estate in fee simple, or, if the land was a new acquisition in Archie Hamby, deceased, a life estate

in the lands; and that the power given by him to Stanford was valid, and that the conveyance from him gave either a fee simple or a life estate to defendant, depending on whether the estate of the allottee was an inheritance or a new acquisition.

Another contention of the defendant is that the deed from A. H. and Dora Hamby to S. M. Wilson was not properly acknowledged, and was therefore not entitled to record, and was not admissible as evidence in the case.

In order to clearly understand these questions it is necessary to refer to some of the Creek agreements and the statutes bearing upon the right to dispose of Creek Indian lands.

Section 16, Supplemental Creek Agreement, ratified by act of Congress, approved June 30, 1902, c. 1323, 32 Stat. 500, is as follows:

"Lands allotted to citizens shall not, in any manner whatever, or at any time, be encumbered, taken or sold to secure or satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this Supplemental Agreement, except with the approval of the Secretary of the Interior.   *   *   *"

The Indian Appropriation Bill of April 21, 1904, c. 1402, 33 Stat. 189, among other things, provides as follows:

"And all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed, and all restrictions upon the alienation of all other allottees of said tribes, except minors, and except as to homesteads, may, with the approval of the Secretary of the Interior, be removed under such rules and regulations as the Secretary of the Interior may prescribe.   *   *   *"

Section 22 of the act of Congress of April 26, 1906 (34 Stat. 137, c. 1876) entitled "An act to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, and for other purposes," is as follows:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs, or belonged, may sell and convey the land inherited from such decedent; and

if there be both adult and minor heirs of such decedent, then such minors may join. in the sale of such lands by a guardian duly appointed by the proper United States Court for the Indian Territory."

Section 8 of the Supplemental Agreement, approved June 30, 1902, and put in force, by proclamation by the President, August 8, 1902 (32 Stat. 500, c. 1323), is as follows:

"All children who have not heretofore been listed for enrollment, living May 25, 1901, born to citizens whose names appear upon the authenticated rolls of 1890, or upon the authenticated rolls of 1895, and entitled to enrollment as provided by the act of Congress approved March 1, 1901 (31 Stat. 861), shall be placed on the rolls made by said Commission. And if any such child has died since May 25, 1901, or may hereafter die before receiving his allotment of lands and distributive share of the funds of the tribe, the lands and moneys to which he would be entitled if living shall descend to his heirs as herein provided and be allotted and distributed to them accordingly."

The third paragraph of section 7 of the Original Creek Agreement, ratified by the act of Congress of March 1, 1901 (31 Stat. 861, c. 676), is as follows:

"The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after the ratification of this agreement, but if he have no such issue then he may dispose of his homestead by will, free from limitation herein imposed, and if this be not done, the land shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, free from such limitation."

In the case of *De Graffenreid v. Iowa Land & Trust Co.,* 20 Okla. 687, 95 Pac. 624, the latter part of the paragraph quoted is construed to mean and include all lands; and it is held in that case that all lands, whether homestead or not, of the Creek allottees, where the descent was cast while the treaty was in effect, shall descend to their heirs, according to the laws of descent and distribution of the Creek Nation.

Section 6 of the Supplemental Creek Agreement (32 Stat. 500) is as follows:

"The provisions of the act of Congress approved March 1, 1901 (31 Stat. 861), in so far as they provide for descent and

distribution according to the laws of the Creek Nation, are hereby repealed, and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas, now in force in the Indian Territory: Provided, That only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit the lands of the Creek Nation; and provided further, that if there be no person of Creek citizenship to take the descent and distribution of said estate then the inheritance shall go to noncitizen heirs in the order named in chapter 49."

The first question for decision is as to the blood of allottee, Archie Hamby, and his mother, Dora Hamby. If Dora Hamby was of Creek blood, she would inherit the allotment of her child, whether the Creek laws of descent and distribution were in force at the time the descent was cast, or the descent was governed by section 6 of the Supplemental Creek Agreement, which put in force chapter 49 of Mansf. Dig. Stats. of Ark. Under the provision of section 6 of the Supplemental Agreement, if of Creek blood, she would be preferred to her husband, and if the case of *Shulthis v. MacDougal* (C. C.) 162 Fed. 331, is to be followed, she would have a fee-simple title to the lands; but, if the estate is not a new acquisition, she would still have an estate for life, and her deed would convey such title as would enable her to maintain ejectment against a person having no title. *Hurst v. Sawyer*, 2 Okla. 470, 37 Pac. 817. Therefore it is not necessary to decide in this case whether the estate was a new acquisition in Archie Hamby, or whether it was an inheritance. If Archie Hamby was of Creek blood, his allotment was subject to the restrictions contained in section 16 of the Supplemental Creek Agreement; if he was not of Creek blood, then it would be necessary to decide whether the restrictions were removed from the sale of his allotment by the provision of the Indian Appropriation Bill of April 21, 1904.

Dora Hamby and her husband both testified that she and her deceased son were members of the Creek Tribe of Indians by blood. They testified that she was one thirty-second Creek, and that the deceased was one sixty-fourth Creek. The enrollment card showed them to have Creek blood. If any of the testimony

taken before the Commission to the Five Civilized Tribes should be considered, then the testimony of Mary E. Bowen, Dora Hamby's grandmother, shows she was of Creek blood. The defendant introduced a copy of the testimony of some witnesses, taken before the Commission to the Five Civilized Tribes, for the purpose of showing that Mary E. Bowen, the grandmother of Dora Hamby, was not a Creek by blood. A great deal of the testimony offered for this purpose was inadmissible at the time it was given before the Commission, even under the liberal rule with reference to pedigree and family relationship. But certainly none of the testimony taken before the Commission in the application for enrollment of Mary E. Bowen *et al.* was admissible in this case. No attempt whatever was made to account for the absence from this trial of the witnesses who had testified before the Commission. The plaintiff objected to its introduction, and when the court admitted it, over his objection, excepted. Whether the court proceeded upon the theory that many courts do, where there is no jury, that it saves time to admit everything, and then reject the incompetent testimony when considering the case, or whether he considered the evidence, does not appear from the record. But, considering all the evidence, incompetent as well as competent, it cannot be said that there is not sufficient evidence to sustain the finding of the court.

It follows from the finding that Archie Hamby and Dora Hamby were of Creek blood; that the lands were subject to the restrictions contained in section 16 of the Supplemental Agreement at the time of the execution of the power of attorney by Dora Hamby; and that the deed executed by Stanford under the power conveyed nothing to the defendant. The plaintiff's deed having been executed by Dora Hamby, the adult heir of the deceased allottee, after section 22 of the act of April 26, 1906, had become the law, conveyed her title to the plaintiff, and whether she owned a fee simple or a life estate only, when her interest vested in plaintiff, he had such title as would maintain ejectment. With this view of the case, it is not necessary to pass on any of the other questions involved, except as to the sufficiency of the

Skelton v. Dill.

acknowledgment of the deed from A. H. Hamby and Dora Hamby to S. M. Wilson.

The defendant objected to the introduction of the deed from A. H. Hamby and Dora Hamby to S. M. Wilson, giving as a reason that the acknowledgment recited that it was taken before a notary public, when in fact it was taken before a chancery clerk. The certificate of the officer taking the acknowledgment recites that "on this day came before me, the undersigned, a notary public, within and for the state of Mississippi," etc., and concludes as follows: "Witness my hand and seal as such chancery clerk and *ex officio* notary public," etc. It is subscribed, "A. L. Endy, Chancery Clerk and *Ex Officio* Notary Public." This acknowledgment was sufficient. *Goree v. Wadsworth,* 91 Ala. 416, 8 South. 712; *Owen v. Baker,* 101 Mo. 407, 14 S. W. 175, 20 Am. St. Rep. 618; *Buntyn v. Shippers' Compress Co.,* 63 Miss. 94.

The acknowledgment would have been good, if taken either by the chancery clerk or by a notary public. Mansf. Dig. Stats. of Ark., sec. 651. It is urged in the brief of defendant that the officer attached no seal to the certificate, but that was not stated as a ground of objection, and cannot now be considered. Plaintiff in his reply brief claims there was a seal attached.

It follows that the judgment of the lower court should be in all things affirmed.

By the Court: It is so ordered.

All the Justices concur: