## BARTLETT et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.    March 3, 1913.)

### No. 3,839.

INDIANS (§ 15*)—LANDS—RESTRICTIONS ON ALIENATION—POWER OF CONGRESS.
It is not within the power of Congress to impose restrictions on the alienation of land allotted to an Indian after the restrictions imposed by prior laws have expired and both the equitable and legal title has become vested in the allottee, and acts general in their terms should not be construed as intended to apply to such cases.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 37–44; Dec. Dig. § 15.*]

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by the United States against H. U. Bartlett and Theo. G. Lashley. Decree for the United States, and defendants appeal. Reversed.

George S. Ramsey and C. L. Thomas, both of Muskogee, Okl., for appellants.

John B. Meserve, Asst. U. S. Atty., of Muskogee, Okl. (William J. Gregg, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Before SANBORN, Circuit Judge, and WM. H. MUNGER and TRIEBER, District Judges.

WM. H. MUNGER, District Judge. From the facts in this case it appears that one Moses Wiley, a duly enrolled three-quarters blood Indian, was, on the 30th day of June, 1902, allotted 160 acres of land, 40 acres of which was selected as a homestead. The remaining 120 acres of said allotment, not being a part of his homestead, is the land involved in this case. The patent to the land was issued to Wiley on March 10, 1903. On January 26, 1912, nearly nine years after the patent, Wiley and his wife conveyed the 120 acres, being his allotment other than the homestead, to one H. U. Bartlett, which deed was filed for record in the office of the register of deeds of Creek county, in the state of Oklahoma, on the 30th day of January, 1912, and duly recorded. On the 29th day of January, 1912, H. U. Bartlett and wife conveyed said lands by quitclaim deed to Theo. G. Lashley, which deed was, on the 30th day of January, 1912, filed for record in the office of the register of deeds of Creek county, Okl., and duly recorded.

On August 10, 1912, the United States filed its bill in equity in the United States District Court for the Eastern District of Oklahoma, seeking to have the said deeds from Moses Wiley and wife to H. U. Bartlett, and from H. U. Bartlett and wife to Theo. G. Lashley, canceled, annulled, and set aside, and the title quieted to said lands in Moses Wiley. Appellants filed a demurrer to the bill, which was overruled, and, appellants electing to stand upon their demurrer, a de-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cree was entered as prayed in the bill, from which appellants prosecute this appeal.

Counsel for the government, in their brief, concede that under the terms of the act of Congress, under which the allotment was made to said Moses Wiley, the lands in question were impressed with a five-year period of restriction against alienation; that said five-year restricted period expired by limitation on the 8th day of August, 1907; that these lands were free from restrictions for the period of time intervening between the 8th day of August, 1907, and the 27th day of July, 1908. They claim that on the 27th day of May, 1908, Congress passed an act reimposing restrictions against the alienation of this land by said Moses Wiley, and they say:

"The single issue presented by this appeal, and the sole question before the court for its determination, is as to whether or no the surplus allotment of a Creek Indian of the three-quarter blood was alienable by the allottee on and after the 27th day of July, 1908."

The lands in question were allotted to Moses Wiley under an act of Congress of June 30, 1902 (32 Stat. 500, c. 1323). So much of that act as is applicable to the consideration of the question before us is found in section 16 of the act, and the applicable portion reads as follows:

"Sec. 16. Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken, or sold to secure or satisfy any debt or obligation, nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior. Each citizen shall select from his allotment forty acres of land, or a quarter of a quarter section, as a homestead, which shall be and remain nontaxable, inalienable, and free from any incumbrance whatever for twenty-one years from the date of the deed therefor, and a separate deed shall be issued to each allottee for his homestead, in which this condition shall appear."

From this it clearly appears that the restriction upon the lands in question were limited to the period of five years from the date of the approval of the supplemental agreement. It is claimed by the government under act of May 27, 1908, a restriction against alienation was reimposed. So much of Act May 27, 1908, c. 199, found in 35 Stat. 312, as is applicable here, is found in the first section, as follows:

"That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: * * * and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe. The Secretary of the Interior shall not be prohibited by this act from continuing to remove restrictions as heretofore, and nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act. * * *"

It is contended on the part of appellants that the foregoing act of May, 1908, is inapplicable, as it expressly provided that the act should

not be construed as imposing restrictions removed from land by or under any law prior to the passage of that act; that, as the restrictions in this case had expired prior to the passage of the act, they came within the exception, for, as is argued, the restriction being imposed by an act of Congress, and limited to a period of five years, when that period expired the restriction was removed by the law which imposed it. It is unnecessary for us to pass upon the correctness of this statement, however, for we are of the opinion that it was not the intent, nor within the power, of Congress, to reimpose a restriction upon the alienation of lands, against which none at the time existed. True it is that the Supreme Court, in Tiger v. Western Investment Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738, held that it was within the power of Congress to continue or extend the period of restriction against alienation during the period of an existing restriction against alienation. The Supreme Court, however, in that case, expressly referred to the fact that the title to the allotment was still held by the United States in trust for the Indian; that, while the land was held by the United States in trust for the Indian allottee, it was competent for Congress to extend the trust period, and prohibit alienation during such extended period. We find nothing in that case holding that, after the trust period had expired and both the legal and equitable title had fully vested in the allottee, such allottee being a citizen of the United States, Congress could thereafter reach out and withdraw the land from alienation and taxation by the state and local municipalities. As soon as the title, both legal and equitable, to the land in question became vested in Moses Wiley, it was subject to taxation by the state and county authorities, and Moses Wiley had full dominion over the same, notwithstanding in many respects the government still retained a guardianship over him.

Suppose, for instance, Moses Wiley had received title to land by inheritance from a white ancestor? Could it be said that, because of the guardianship of the United States over him, Congress could deprive him of his full property rights in and to such land, and also withdraw the same from state or municipal taxation? It seems clear to us that it could not; and, if not, we fail to see upon what principle it can be said it can draw to itself control over the alienation of land, the title to which, both legal and equitable, it has conveyed to the Indian. In Mullen v. United States, 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834, it was held that the United States, though retaining its guardianship over the Choctaw Indians, could not maintain an action to set aside conveyances made by Choctaw Indians to lands against the alienation of which no restriction was imposed.

The only case brought to our attention wherein it has been held that the government, by virtue of its guardianship alone, could lawfully restrain an Indian from alienating lands to which he had the full title in fee, and in which the United States had no legal or equitable interest, is the case of United States v. Allen, 179 Fed. 13, 103 C. C. A. 1, in the opinion of which there is an expression to the effect that the government may impose such restriction. The question, however, was not involved in that case, and the expression to that ef-

fect is mere obiter. The opinion in that case covered a number of cases, and was reviewed by the Supreme Court in 224 U. S. 415, 32 Sup. Ct. 425, 56 L. Ed. 820, under the title of Heckman v. United States, in 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834, under the title of Mullen v. United States, in 224 U. S. 458, 32 Sup. Ct. 544, 56 L. Ed. 841, under the title of Goat v. United States, and in 224 U. S. 471, 32 Sup. Ct. 549, 56 L. Ed. 847, under the title of Deming Investment Co. v. United States; and the judgment was reversed, in so far as it held that the United States could maintain an action to set aside conveyances made to lands after the restriction had terminated.

We are of opinion that, as the restriction against alienation of the lands in question expired, and the full title in fee vested in Moses Wiley, prior to the passage of the act of May 27, 1908, the United States has no such interest in the lands as entitles it to maintain this action.

The judgment is therefore reversed, and the cause remanded to the court below, with directions to sustain the demurrer and dismiss the bill.