## BOXLEY v. SCOTT et al.

No. 7617—Opinion Filed Jan. 9, 1917.

(162 Pac. 688.)

### 1. Indians—Homestead Allotments—Lease.

In August, 1913, the guardian of a half-blood Creek Indian leased his surplus and homestead allotments for four years to C., with the approval of the proper county court, but without the˙ approval of the Secretary of the Interior. Held, that said lease was void as to the homestead portion of said allotment and valid as to· the surplus portion of same.

### 2. Same—Conveyances.

A half-blood Creek Indian minor dies in August, 1914, unmarried, without issue, and intestate, leaving as his sole heir at law his mother, P., a full-blood Creek Indian. In September, 1914, B. takes a warranty deed to the entire 160-acre allotment of her deceased son from said full-blood heir, P., and has the same duly recorded, but does not have the same approved by the proper county court. In March, 1915, S. takes a deed from said full-blood heir, P., to said allotment, and has the same duly approved by the proper county court and then duly recorded. Held, that the deed from P. to B. is void, and the deed from P. to S. is valid and conveys the entire allotment in fee simple to S., subject to the rights of C. under his lease as to the 120-acre surplus portion of same.

### 3. Indians—Indian Lands—Restrictions.

It is within the power of Congress to continue or extend the period of restriction against alienation, or provide for other restrictions during the period of existing restrictions against alienation.

(Syllabus by Davis, C.)

Error from District Court, Hughes County; R. W. Higgins, Assigned Judge.

Action by E. M. Scott against J. D. Boxley and Franklin Chaney. Judgment in favor of the plaintiff, E. M. Scott, and against the defendant, J. D. Boxley, and against the defendant, Franklin Chaney, in part. Defendant Boxley brings error. Affirmed.

Warren & Crutcher and J. L. Skinner, for plaintiff in error.

W. T. Anglin,· for defendants in error.

Opinion by DAVIS, C. Jimmie Bighead was a Creek Indian of the one-half blood. His name appears on the approved rolls of the Creek Nation opposite No. 7521. Under the Original Creek and Supplemental Treaties there was duly allotted to him the southwest quarter of section 23, township 6 north, range 8 east, 160 acres of land in what was then the Creek Nation of the Indian Territory, now Hughes county, state of Oklahoma, the northwest quarter of the southwest quarter of which was designated and allotted to

him as his homestead. The proper allotment certificates and patents to said land were duly issued and delivered to him by the United States government and the Creek Nation under said treaties or agreements. Jimmie had a guardian duly appointed, qualified, and acting under authority of the county court of Hughes county, Okla., after the advent of statehood, and this guardian proceeded, amongst other things, to lease Jimmie's entire allotment to Franklin Chaney for the term and period of four years from January 1, 1914, to December 31, 1917; said lease being in writing and dated August 30, 1913, and duly approved by the county judge of Hughes county, Okla., on August 30, 1913, but was never approved by the Secretary of the Interior. In the month of August, 1914, Bighead died, being at the time of his death unmarried, without issue, and intestate. He left surviving him, as his sole and only heir at law, Jennie Peter, a full-blood Creek Indian woman, duly enrolled.

On September 24, 1914, Jennie Peter made, executed, and delivered to J. D. Boxley her warranty deed to this entire allotment which she had thus inherited from Jimmie Bighead; that J. D. Boxley caused the deed to be duly recorded in the office of the county clerk of Hughes county, Okla., on September 24, 1914, but said deed was never approved by the county court of Hughes county, Okla. On the 8th day of March, 1915, Jennie Peter made, executed, and delivered to E. M. Scott her warranty deed to the entire allotment inherited by her from the deceased, Jimmie Bighead, and the said Scott caused said deed to be duly approved by the county court of Hughes county, Okla., on March 8, 1915, and duly recorded in the office of the county clerk of Hughes county, Okla., on March 9, 1915.

Scott sues Boxley and Chaney in the district court of Hughes county, Okla., on March 23, 1915, the prayer of his petition being as follows:

"Wherefore plaintiff prays that the defendants be required to set forth the nature of their claims to said premises, if any; that this court decree that plaintiff's claim and title to said premises, to wit, the southwest quarter of section 23, township 6 north, range 8 east, is valid and perfect, and that the said defendants have no right, valid claim, or title therein, nor any interest whatsoever in said premises; that the title of plaintiff be quieted in said premises; that said defendants be perpetually barred and enjoined from setting up or asserting any title or interest in said premises adverse to the plaintiff, and for such other relief as may be equitable and

proper, and for the cost of this action, and will ever pray."

With these facts before the trial court in the nature of an agreed statement of facts, the trial court rendered the following judgment or decree:

"Now on this 24th day of June, 1915, this cause came on to be heard in its regular order, plaintiff being represented by W. T. Anglin, and the defendants by J. L. Skinner and F. L. Warren, and the matter being submitted upon an agreed statement of facts, and being fully advised in the premises, finds the issues in favor of the plaintiff and against the defendants.

"And the court finds that E. M. Scott, the plaintiff, is the legal owner of the lands described in his petition, and that his title thereto is valid and perfect and superior to any right or interest claimed by the defendants, and that the defendants, or either of them, have no right, title, or interest in and to the said premises, except that the defendant, Franklin Chaney, has a valid and subsisting lease upon the surplus of Jimmie Bighead, which is described as follows: The east half of the southwest quarter and the southwest quarter of the southwest quarter of section 23, township 6 north, range 8 east—and that he is entitled to the possession of the same upon complying with the terms and conditions of the lease.

"It is further ordered, adjudged, and decreed by the court that the title and possession of the said plaintiff in said premises be, and the same is hereby, forever settled and quieted in the plaintiff as against all claims and demands of the said defendants, except as herein stated as to the defendant Franklin Chaney and those claiming or to claim under them or any of them; that the deed from Jennie Peter to J. D. Boxley, dated September 24, 1914, recorded in Book 20 at page 275, in said county, and all other deeds or documents in said chain of title claimed by defendants, be, and the same are hereby, cancelled and removed as clouds on the title of the plaintiff, E. M. Scott, in and to said described premises; that the lease contract made to Franklin Chaney, by N. F. Jacobs, guardian of Jimmie Bighead, dated August 30, 1913, and recorded in Book 6 at page 835 in the office of the register of deeds of Hughes county, Okla., be, and the same is hereby, canceled in so far as the same covers the homestead allotment of Jimmie Bighead, the allottee, and is removed as a cloud on the title of the plaintiff, E. M. Scott, in and to the same, which is described as follows: The northwest quarter of the southwest quarter of section 23, township 6 north, range 8 east.

"And it is further ordered, decreed, and adjudged that the defendant J. D. Boxley and those claiming through and under him be, and they are hereby, perpetually enjoined and forbidden to claim any right, title, interest, or estate in or to said premises by

virtue of said deed, hostile or adverse to the possession and title of plaintiff herein, and the said defendant and those claiming under him are hereby perpetually forbidden and enjoined from commencing any suit to disturb said plaintiff in his said possession and title to said premises, from setting up any claim or interest adverse to the title of plaintiff herein, and from disturbing plaintiff in his peaceful and quiet enjoyment of said described land.

"And it is further ordered, decreed, and adjudged that the said defendant Franklin Chaney and those claiming through, by, or under him be, and they are hereby, perpetually enjoined and forbidden to claim any right, title, interest, or estate in and to the northwest quarter of the southwest quarter of section 23, township 6 north, range 8 east, by virtue of his lease contract hostile and adverse to the deed of the plaintiff herein, and the said Franklin Chaney and those claiming under him are hereby forbidden and enjoined from commencing any suit to disturb the said plaintiff in his said possession of the last above-described lands; that the defendant Franklin Chaney is rightfully in possession of the east half of the southwest quarter and the southwest quarter of the southwest quarter of section 23, township 6 north, range 8 east, by virtue of his lease contract upon the premises and upon his complying with the conditions of the same. It is further adjudged that the plaintiff have and recover his cost from the defendants, to all of which defendants except.

"Defendants and each of them pray an appeal to the Supreme Court, which is by the court allowed, and the time for making and serving case-made is hereby by the court extended for a period of 60 days from date hereof, with ten days to suggest amendments and to be settled upon five days' notice by either party. It is further ordered by the court that the supersedeas bond herein is fixed in the sum of $200 for each of the defendants, which said bond is to be executed within 30 days from date hereof. Execution is hereby stayed pending the execution of said appeal bond and pending said appeal.

"Defendants and each of them having this day filed in this cause motion for new trial, the same has been examined by the court, and the court, being fully advised in the premises, hereby overrules said motion, to which action of the court the defendants and each of them except. Defendants and each of them pray an appeal to the Supreme Court, which is by the court allowed, and a period of 60 days is hereby granted the defendants and each of them to make and serve a case-made, ten days in which to suggest amendments by the plaintiff, which said case-made is to be settled by the court upon five days' notice by either party. Appeal bond is hereby fixed in the sum of $200 for each of the defendants, to be executed within 30 days from date hereof, and execution is stayed pending the execution of said bonds and pending this appeal."

This appeal has been taken to vacate this judgment. Should it be vacated or modified in any particular?

Under the Original Creek Agreement, approved March 1, 1901 (31 Stat. 861, c. 676, sec. 7), the surplus allotment of Jimmie Bighead was not alienable by him nor by his heirs at any time before the expiration of five years from the ratification of said agreement, except with the approval of the Secretary of the Interior, and under the same section of said act his 40-acre homestead was not alienable for 21 years, for which he shall have a separate deed containing this condition.

Under the Supplemental Creek Agreement, approved June 30, 1902 (32 Stat. 500, c. 1323, sec. 16), the surplus allotment of Jimmie Bighead could not be alienated by him nor by his heirs before the expiration of five years from the date of the approval of said Supplemental Agreement, except with the approval of the Secretary of the Interior; and his 40-acre homestead allotment could not be alienated by him for 21 years from the date of the deed therefor, and a separate deed must be issued to him for his homestead, in which this condition shall appear.

Section 17 of the Supplemental Creek Agreement amends sec. 37 of the Original Creek Agreement, and as amended and re-enacted provides for the leasing of allotments under certain conditions and restrictions as set forth therein, but, as Jimmie Bighead was a minor and did not rent his allotment until August 30, 1913, it will not be necessary to comment upon sec. 17. supra; as the validity of his said lease or rental contract must be tested under the terms and provisions of the act of Congress approved May 27, 1908, and which took effect July 27, 1908 (35 Stat. 312, c. 199).

Before the restricted periods upon the alienation of the surplus and homestead allotments of Jimmie Bighead had expired, Congress passed the act of April 21, 1904 (33 Stat. 189, c. 1402), which, among other things, contained the following provisions:

"And all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed, and all restrictions upon the alienation of all other allottees of said tribes, except minors, and except as to homesteads, may, with the approval of the Secretary of the Interior, be removed under such rules and regulations as the Secretary of the Interior may prescribe, upon application to the United States Indian agent at the Union Agency in charge

of the Five Civilized Tribes, if said agent is satisfied upon a full investigation of each individual case that such removal of restrictions is for the best interest of said allottee. The finding of the United States Indian Agent and the approval of the Secretary of the Interior shall be in writing and shall be recorded in the same manner as patents for lands are recorded."

Then followed the passage by Congress of the act of March 3, 1905 (33 Stat. 1048, c. 1479), which contained the following provision:

"No lease made by any administrator, executor, guardian, or curator shall be valid or enforceable without the approval of the court having jurisdiction of the proceeding."

Section 20 of the act of Congress approved April 26, 1906 (34 Stat. 137, c. 1876), reads as follows:

"That after the approval of this act all leases and rental contracts, except leases and rental contracts for not exceeding one year for agricultural purposes for lands other than homesteads, of full-blood allottees of the Choctaw, Chickasaw, Cherokee, Creek, and Seminole Tribes shall be in writing and subject to approval by the Secretary of the Interior and shall be absolutely void and of no effect without such approval: Provided, that allotments of minors and incompetents may be rented or leased under order of the proper court: Provided further, that all leases entered into for a period of more than one year shall be recorded in conformity to the law applicable to recording instruments now in force in said Indian Territory."

This brings us down to the act of Congress approved May 27, 1908, and which went into effect July 27, 1908 (35 Stat. 312), with no link in the chain of restrictions broken as to the alienation of the allotment of Jimmie Bighead, a one-half blood Creek Indian minor. This act became effective in his lifetime and before his allotment was leased with the approval of the proper county court, and without the approval of the Secretary of the Interior.

Section 1 of this act removed all restrictions upon the surplus allotment of Jimmie Bighead and retained the restriction against alienation of his homestead until April 26, 1931, except that the Secretary of the Interior might remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for Jimmie Bighead's benefit as he may prescribe. By sec. 6 of this same act the removal of all restrictions under sec. 1 of the act as to Jimmie Bighead's surplus allotment is qualified by the use of the following language:

"That the persons and property of minor

allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma."

See, also, Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755.

Section 2 of this act provides:

"That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal: Provided, that leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise: And provided further, that the jurisdiction of the probate courts of the state of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions, and the term minor or minors, as used in this act, shall include all males under the age of twenty-one years and all females under the age of eighteen years."

And so it becomes manifest that the homestead of Jimmie Bighead, being restricted, could not be sold at all prior to April 26, 1931, except the Secretary of the Interior remove the restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of Jimmie Bighead as he may prescribe, and could not be leased for more than one year without the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior. The jurisdiction of the probate courts of the state of Oklahoma over lands of minors such as Jimmie Bighead is expressly made subject to the foregoing provisions, and has therefore been otherwise expressly provided for by law in this regard, before making the persons and property of minor allottees of the Five Civilized Tribes subject to the jurisdiction of the probate courts of the state of Oklahoma under the first sentence of sec. 6 of said act.

Hence it follows as a natural and logical sequence that all that portion of the final judgment or decree of the court below in this cause touching the lease of Jimmie Bighead's allotment by his guardian to Chaney properly declares the law, and is eminently right and wholly without error, and must not be disturbed by this court.

With "a firm cable" (Goodrum v. Buffalo, 162 Fed. 817, 89 C. C. A. 525) at all times attached to this allotment in severalty to its ward, Jimmie Bighead, in order to hold it to the exclusive use and enjoyment of him and his lawful heirs, the federal government, in the act of Congress of March 1, 1901, supra, placed this provision, which is the last clause of section 7 thereof:

"The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after the ratification of this agreement, but if he have no such issue, then he may dispose of his homestead by will, free from limitation herein imposed, and if this be not done, the land shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, free from such limitation."

And in the act of June 30, 1902, supra, placed this provision, which is sec. 6 of said act:

"The provisions of the act of Congress approved March 1, 1901 (31 Stat. L. 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas now in force in Indian Territory: Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation: And provided further, that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to non citizen heirs in the order named in said chapter 49."

Alive at all times to the keenest appreciation of the true condition of these unlearned, unlettered, and inexperienced children of destiny, who live close to nature and closer still to nature's God, and fully apprised of their simple lives and primitive customs, and for their welfare and protection from the avaricious greed of their pale-faced neighbors, the greatest and best government in the universe threw the following mantle of protection around the full-blood Indian heirs of a deceased Indian allottee by means of the provisions of sec. 22 of the act of Congress of April 26, 1906 (34 Stat. 137):

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States court for the Indian Territory. And in case of the organization of a state or territory, then by a proper court of the county in which said minor or minors may reside or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

And it continued said protection under sec. 9 of the act of Congress of May 27, 1908, supra, which is as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: Provided further, that if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March fourth, nineteen hundred and six, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for the use and support of such issues, during their life or lives, until April twenty-sixth, nineteen hundred and thirty-one; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from all restrictions; if this be not done, or in the event the issue hereinbefore provided for die before April twenty-sixth, nineteen hundred and thirty-one, the land shall then descend to the heirs, according to the laws of descent and distribution of the state of Oklahoma, free from all restrictions: Provided further, that the provisions of section twenty-three of the act of April twenty-sixth, nineteen hundred and six, as amended by this act, are hereby made applicable to all wills executed under this section."

These two sections of these acts supra have been construed in the following cases: Western Investment Co. v. Marchie Tiger, 21 Okla. 630, 96 Pac. 602; Id., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738; Harris v. Gale (C. C.) 188 Fed. 712; U. S. v. Shock (C. C.) 187 Fed. 862; Id., 187 Fed. 870; Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615; Id. (C. C.) 162 Fed. 331; Id., 225 U. S. 561, 32 Sup. Ct. 704, 56 L. Ed. 1205; U. S. v. Knight, 206 Fed. 145, 124 C. C. A. 211; Sanders v. Sanders, 28 Okla. 59, 117 Pac. 338; McHarry v. Eatman, 29 Okla. 46, 116 Pac. 935; Wilson v. Morton, 29 Okla. 745, 119 Pac. 213; Skelton v. Dill, 30 Okla. 278, 119 Pac. 267; In re Davis' Estate, 32 Okla. 209, 122 Pac. 547; Parkinson v. Skelton, 33 Okla. 813, 128 Pac. 131; Heckman v.

U. S., 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820; Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755; 29 Op. Atty. Gen. 131; Lynde v. Brown, 22 Okla. 216, 97 Pac. 613; 27 Op. Atty. Gen. 530; Mullen v. Short, 38 Okla. 333, 133 Pac. 230; Gardner, County Judge, v. State, 27 Okla. 1, 110 Pac. 749; Stout v. Simpson, 34 Okla. 129, 124 Pac. 754.

The restrictions against the alienation of the allotment of Jimmie Bighead were existing when section 9 of the act of May 27, 1908, became the law. It is within the power of Congress to continue or extend the period of restriction against alienation, or provide for other restrictions during the period of existing restrictions against alienation. Tiger v. Western Inv. Co., supra; Bartlett et al. v. U. S., 203 Fed. 410, 121 C. C. A. 520; Heckman v. U. S., 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820; Mullen v. U. S., 224 U. S. 448; 32 Sup. Ct. 494, 56 L. Ed. 834; Goat v. U. S.. 224 U. S. 458, 32 Sup. Ct. 544, 56 L. Ed. 841; Deming Inv. Co. v. U. S., 224 U. S. 471, 32 Sup. Ct. 549, 56 L. Ed. 847.

There are three provisos to the body of section 9 of the act of Congress of May 27, 1908. The first proviso qualifies the body of said section which is the first sentence thereof only. It simply means just what it says. The second proviso qualifies the body of said section only, and does not in any manner affect or qualify the first proviso, except as to the homestead of a deceased member of the Five Civilized Tribes of one-half or more Indian blood, and then only when the conditions and circumstances mentioned contained and set forth in said second proviso exist. The words "if this be not done," in said second proviso of said section, refer only to the things mentioned in said second proviso, and the words "the land shall then descend to the heirs, according to the laws of descent and distribution of the state of Oklahoma, free from all restrictions," simply bring the land of any member of the Five Civilized Tribes of one half or more Indian blood who dies back under the body or first sentence of said section 9, stripped of all restrictions against alienation by such allottee upon the non-happening of the matters and things contained and set forth in the second proviso of said section, leaving the first proviso of said section in force and intact as a restriction in the nature of a protection when such Indian heir is of full blood and comes to alienate said inheritance. Hence it follows that, in order to obtain a valid deed to the allotment of Jimmie Bighead, a half-blood Creek Indian, from Jennie Peter, his full-blood Creek Indian heir, such deed must be approved by the court having jurisdiction of the settle-

ment of the estate of the said Jimmie Bighead, which would be the county court of Hughes county, Okla., it being expressly provided under section 5 of said act of May 27, 1908, supra, as follows:

"That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument of method of incumbering real estate, made before or after the approval of this act, which affects the title of the land allotted to allottees of the Five Civilized Tribes prior to removal of restrictions therefrom, and also any lease of such restricted land made in violation of law before or after the approval of this act shall be absolutely null and void."

The deed from Jennie Peter to Boxley, not having been approved by the county court of Hughes county, Okla., was and is of no validity and absolutely null and void under the first proviso of said section 9, and under said section 5 of the act of Congress of May 27, 1908, supra, and the deed from Jennie Peter to Scott, having been taken and approved in strict conformity with said act, is valid, and conveyed to him the fee-simple title to said allotment of Jimmie Bighead.

Thus, in closing this chronicle concerning Jimmie Bighead and his allotment, we find that the judgment or decree of the lower court is right in toto, and the same is accordingly affirmed.

By the Court: It is so ordered.