*WESTERN INV. Co. *et al.* v. TIGER.

No. 30.    Opinion Filed June 26, 1908.

(96 Pac. 602.)

1.    INDIANS — Creek Lands—Alienation by Full-blood Heir—Restrictions.    An adult full-blood Creek Indian who, after five years after the approval of the Supplemental Creek Agreement, executed deeds without the approval of the Secretary of the Interior, conveying lands which had been allotted to certain of his relatives who were full-blood Creek Indians, and which had been inherited by him upon the death of such relatives, thereby conveyed a good title to his grantees.

*Appealed to the Supreme Court of the United States.

2. **SAME.** Act Cong. April 26, 1906, c. 1876, 34 Stat. 145, sec. 22, entitled "An act to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, and for other purposes," does not extend beyond the time provided by section 16 (Act March 3, 1893, c. 209, 27 Stat. 645) of the Supplemental Creek Agreement the restrictions upon the powers of heirs who are full-blood Creek Indians to alienate their inherited lands.

(Syllabus by the Court.)

*Error from the United States Court for the Western District of the Indian Territory; W. R. Lawrence, Judge.*

Action by Marchie Tiger against the Western Investment Company and another. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with directions.

*J. C. Stone, W. W. Wood, Gibson & Ramsey, L. J. Roach, Chris M. Bradley, R. C. Allen,* and *J. C. Pinson,* for plaintiffs in error.

*Judson J. Hughes,* for defendant in error.

HAYES, J. This action was brought in the United States Court for the Western District of the Indian Territory at Muskogee, and trial had in that court shortly before the admission of the state into the Union, which resulted in a judgment for defendant in error, plaintiff below. Appeal from that judgment to this court has been perfected since the admission of the state.

Marchie Tiger, defendant in error (plaintiff below) is an enrolled full-blood Creek Indian, and is the sole heir at law of his deceased relatives, Sam Tiger, Martha Tiger, Lydia Tiger, and Louisa Tiger, all of whom were enrolled as full-blood Creek Indians, and who died intestate during the year 1903, without issue, after having had allotted to them their respective allotments of land in the Creek Nation, consisting of 160 acres each, which allotments of land they owned at the time of their death, and were inherited by Marchie Tiger. Marchie Tiger on the 8th day of August, 1907, conveyed the land so inherited by him from Sam Tiger and Martha Tiger to the plaintiff in error the West-

ern Investment Company, and by a series of deeds on, respectively July 1, July 26, August 8, and August 13, 1907, he conveyed the land inherited by him from Lydia and Louisa Tiger to the plaintiff in error the Coweta Realty Company. He seeks by this action to have said deeds canceled and the sales so made by him set aside, and the cloud formed upon his title by said conveyances removed.

Plaintiffs in error (defendants below) filed their separate answers, and the court referred the case to the master in chancery to take evidence and report his findings of fact and conclusions of law. The master, after taking the evidence, filed his report of findings of fact and conclusions of law, and recommended that the suit be dismissed for want of equity. The court set aside the master's findings, both of law and of fact, and entered a decree in accordance with the prayer of plaintiff's petition. There is but little controversy, if any, about the facts. The findings of the master and of the court as to the facts are, for the purposes of the questions of law involved in this case, the same, and are substantially as above stated.

The only proposition presented for our consideration by this appeal is whether a fullblood Creek Indian could on the 8th day of August, 1907, convey lands inherited by him from his relatives who were full-blood Creek Indians, which lands had been allotted to his relatives as the portion of lands to which they were entitled as members of the Creek Tribe of Indians. In considering this proposition, it will be necessary for us to briefly review the treaties of the United States with the Creek Tribe of Indians and the laws of Congress leading up to and under which allotments of the lands of the Creek Nation have been made to the individual members of the Creek Tribe of Indians. The lands embraced within the Creek Nation were acquired by the United States by the Louisiana Purchase, and at one time were a part of the public domain of the United States. On the 13th day of February, 1833, a treaty was concluded between the United States and the Creek Tribe of Indians, by which the United States, in consideration of the Creek Tribe of Indians relinquishing their claims to certain

lands previously occupied by them in Georgia, agreed to convey the lands within the limits of the Creek Nation to the Creek Tribe of Indians, which lands include the lands in controversy in this case. Article 3 of that treaty provides:

"The United States will grant a patent in fee simple to the Creek Nation of Indians for the land assigned said Nation by this treaty or convention, whenever the same shall have been ratified by the President and Senate of the United States, and the right thus guaranteed  by the United States shall  be continued to said tribe of Indians so long as they shall exist as a nation, and continue to occupy the country hereby assigned to them."

In compliance with this provision of the treaty, the United States on August 11, 1852, conveyed said land to the Creek Nation by patent which contained a provision as follows:

"Now know ye that the United States of America, in consideration of the premises and in conformity with the above recited provisions of the treaty aforesaid, have given and granted and by these presents do give and grant unto the said Muskogee, or Creek Tribe of Indians, the tract of country above described. To have and to hold the same unto the said tribe of Indians so long as they shall exist as a nation and continue to occupy the country hereby conveyed to them."

Since that time the Creek Tribe of Indians have occupied the lands so conveyed.  About 1890 the United States government began to take steps looking to  the dissolution of the ownership in common of the lands by the Five Civilized Tribes  of Indians, and to distribute and allot the same to the individual members of the  tribe.  On March  3, 1893 (Act March 3, 1893, c. 209, 27 Stat. 645), an act was passed by Congress which provided:

"Sec.  15.  The consent of the United States is hereby given to the allotment of lands in severalty not exceeding 160 acres to any one individual within the limits of the country occupied by the Creeks; and upon such allotments the individuals to whom the same may be allotted shall be deemed to be in all respects citizens of the United States; and upon the allotment of the lands held by said tribe the reversionary interest of the United States therein shall be relinquished and shall cease."

Section 16 of that act provides for the appointment by the President of three commissioners to negotiate with the Creek Nation for the purpose of extinguishing the tribal title to any of the lands held by the tribe, and for the allotment and division of the same in severalty among the members of the tribe, and the commissioners were authorized to make such agreement with the tribe as might be just and proper to accomplish this purpose, and, upon perfecting such agreement, they were authorized to survey and designate the proper allotments. This commission, commonly known as the Dawes Commission, was continued in existence by acts of Congress of March 2, 1895, and of June 10, 1898. This commission on March 8, 1900, negotiated an agreement or treaty with the Creek Tribe, which was ratified and approved by an act of Congress of March 1, 1901 (Act March 1, 1901, c. 676, 31 Stat. 861), and is commonly known as the "Creek Agreement" or "Creek Treaty." Section 3 of this agreement reads: "All lands of said tribe, except as herein provided, shall be allotted by said commission so as to give each an equal share of the whole in value." Section 23, of this treaty provides how the allotments of land shall be conveyed to the allottees, which, in substance, is that the principal chief shall execute and deliver to each Creek citizen, after he has selected his allotment, a deed conveying to the allottee all the right, title, and interest of the Creek Nation, and of all other citizens in and to the lands embraced in the allottee's allotment certificate. It is provided that such conveyance shall be approved by the Secretary of the Interior, and that the approval of the Secretary of the Interior shall operate as a relinquishment to the grantee of all the right, title, and interest of the United States in and to the lands embraced in the deed. By this treaty certain conditions and restrictions were imposed upon the lands allotted, but those provisions have been modified by subsequent agreements or acts of Congress, and will be stated later as modified and amended.

Section 16 of what is known as the "Supplemental Creek Agreement," passed on June 30, 1902, provides that "lands al-

lotted to citizens shall not in any manner whatever or at any time
be incumbered, taken, or sold to secure or satisfy any debt or obli-
gation nor be alienated by the allottee or his heirs before the ex-
piration of five years from the date of the approval of this supple-
mental agreement, except with the approval of the Secretary of
the Interior."

Under the provisions of the treaty and laws enacted by Con-
gress herein set out, the deceased relatives of Marchie Tiger received
their allotments of land in the Creek Nation.

It is agreed that the patents to the land in controversy to the
respective allottees were executed by the Creek Nation, approved
by the Secretary of the Interior, and delivered prior to the execu-
tion by Marchie Tiger of the deeds in controversy in this action.
The land inherited by Marchie Tiger from his deceased relatives
had since 1852 belonged to the Creek Nation or Tribe of Indians
by virtue of a patent from the United States, but the United
States retained an interest in said land in the nature of a revers-
ionary interest by the conditions contained in the patent, which
provided that the lands therein described should be the property
of the said tribe of Indians "so long as they shall exist as a nation
and continue to occupy the country hereby conveyed to them."

It is immaterial in this case whether the title to the lands in
controversy became vested in the deceased relatives of Marchie
Tiger at the time they were allotted to them, or at the time the
Creek Nation executed a patent approved by the Secretary of the
Interior conveying said lands to said allottees, for the reason that
it is agreed that both of these events had taken place prior to the
time Marchie Tiger executed his deeds of conveyance to plaintiffs
in error. He was at such time the owner of the fee-simple title to
all the lands conveyed by him to plaintiffs in error, which title he
had inherited from the deceased relatives without condition or
restriction, except the restriction imposed by section 16 of the
Supplemental Creek Agreement, to the effect that neither the al-
lottee nor his heirs should have the power to alienate an allotment
until after the expiration of five years from the date of the ap-

proval of said agreement.     Marchie Tiger inherited from his deceased relatives the same title to the land in controversy that they received from the Creek Nation and the United States, which was a fee-simple title, notwithstanding the conditions and restrictions upon the alienation of same for said period of five years. *Libby v. Clark,* 118 U. S. 250, 6 Sup. Ct. 1045, 30 L. Ed. 133; *Schrimpscher v. Stockton,* 183 U. S. 290, 22 Sup. Ct. 107, 46 L. Ed. 203; *Lykins v. McGrath,* 184 U. S. 169, 22 Sup. Ct. 450, 46 L. Ed. 485. In *Schrimpscher v. Stockton, supra,* Mr. Justice Brown, in discussing the question, said:

"Here the United States had issued a patent to Rogers 'and to his heirs and assigns, forever', subject to a condition, not that the title should ever revert to the United States, but that he should not alienate the lands without the consent of the Secretary of the Interior.   The government thus passed all its title to the land in fee simple, and a violation of the condition of the patent would not redound to the benefit of the United States, or enable it to repossess the lands, but was simply intended to protect the grantee himself against his own improvident acts, and to declare that the title should remain in him, notwithstanding any alienation that he might make."

Upon the expiration of five years after the approval of the Supplemental Creek Agreement, containing section 16, *supra,* imposing the restrictions upon the alienation by a Creek Indian of his allotted lands, any such Creek Indian to whom allotment had been made would own the fee-simple title to same without any restriction upon the alienation, and would have the power to alienate the same.   It has been repeatedly held by the Supreme Court of the United States that where the United States conveys property to an Indian absolutely, without any condition or restriction upon its alienation, such Indian can dispose of the same, and give good title to his grantee. *Crews v. Burcham,* 1 Black (U. S.) 352, 17 L. Ed. 91; *Wilson v. Wall,* 6 Wall. (U. S.) 83, 18 L. Ed. 727; *Pennock v. Franklin County,* 103 U. S. 44, 26 L. Ed. 367; *Elwood v. Flannigan,* 104 U. S. 563; *Jones v. Mechan,* 175 U. S. 1, 20 Sup. Ct. 1, 44 L. Ed. 49.   The Supplemental Creek Agreement,

containing said section 16, was ratified by the Creek Tribe of Indians on June 26, 1902, and proclaimed by the President of the United States on August 8, 1902; so, whether we compute the time from the date of the ratification of the treaty by the tribe or from the date of the President's proclamation, five years had expired since such approval prior to the execution of the deeds by which Marchie Tiger on August 8 and August 13, 1907, conveyed said land in controversy to plaintiffs in error.

But it is contended by defendant in error that section 16 of the Supplemental Creek Agreement had been amended and the restrictions upon the alienation of land by the allottee and his heirs provided in said section had been extended by the provisions of an act of Congress passed April 26, 1906 (Act April 26, 1906, c. 1876, 34 Stat. 144). Section 19 of said act reads as follows:

"That no full-blood Indian of the Choctaw, Chickasaw, Cherokee, Creek, or Seminole tribes shall have power to alienate sell, dispose of, or incumber in any manner any of the lands allotted to him for a period of twenty-five years from and after the passage and approval of this act, unless such restriction shall, prior to the expiration of said period, be removed by act of Congress; and for all purposes the quantum of Indian blood possessed by any member of said tribes shall be determined by the rolls of citizens of said tribes approved by the Secretary of the Interior: Provided, however, that such full-blood Indians of any of said tribes may lease any lands other than homesteads for more than one year under such rules and regulations as may be prescribed by the Secretary of the Interior; and in case of the inability of any full-blood owner of a homestead, on account of infirmity or age, to work or farm his homestead, the Secretary of the Interior, upon proof of such inability, may authorize the leasing of such homestead under such rules and regulations: Provided, further, that conveyances heretofore made by members of any of the Five Civilized Tribes subsequent to the selection of allotment and subsequent to removal of restrictions, where patents thereafter issue, shall not be deemed or held invalid solely because said conveyances were made prior to issuance and recording or delivery of patent or deed; but this shall not be held or construed as affecting the validity or invalidity of any such conveyance, except as hereinabove provided; and every

deed executed before or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby declared void: Provided, further, that all lands upon which restrictions are removed shall be subject to taxation and the other lands shall be exempt from taxation as long as the title remains in the original allottee."

Section 20 provides how the allotments of land may be leased by full-blood allottees of the Five Civilized Tribes with the approval of the Secretary of the Interior, when the allottee is an adult and the lease is for a longer term than one year, or for the homestead, and that the allotment of minors may be leased under proper order of the court. Section 21 provides that the allotment of a deceased allottee who died intestate without widow, heir or heirs or surviving spouse, if such facts be known to the Secretary of the Interior, shall revert to the tribe, and be disposed of in the manner provided, and, if it be not known to the Secretary of the Interior, that such allotment shall escheat to the state. Section 22 of said act provides as follows:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States court for the Indian Territory. And in case of the organization of a state or territory, then a proper court of the county in which said minor or minors may reside or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

At the time of the passage of said act of Congress approved April 26, 1906, the deceased relatives of Marchie Tiger, if then living, or Marchie Tiger, if they were then deceased, could not have conveyed the lands in controversy, for the reason that at that

time five years had not expired since the approval of the Supplemental Creek Agreement, and the deceased relatives of Marchie Tiger in accepting deeds from the Creek Nation, approved by the Secretary of the Interior, accepted the same subject to the restrictions upon their power, and upon the power of their heirs in the event of their death, to alienate the land prior to the expiration of said five years without the approval of the Secretary of the Interior. It is contended that section 19 of said act extends this restriction which had not expired as to the deceased relatives of Marchie Tiger, or as to their adult heir, Marchie Tiger, at the time of its enactment. It is evident from the language of section 19 that Congress has undertaken to extend the restrictions on the power of the full-blood Indians of the Five Civilized Tribes to alienate, sell, dispose of, or incumber the lands allotted to them, but we cannot conceive how the language of said section which undertakes to extend such restrictions could have been made plainer in its meaning. There is no ambiguity in the language, and no construction of the same is required. The terms used should be taken and applied in their commonly accepted meaning. The language of the section is that "no full-blood Indians," not "no full-blood Indian or his heirs," "shall have power to alienate, sell, dispose of, or incumber in any manner any of the lands allotted to him," not "lands allotted to him or inherited by him," "for a period of twenty-five years from and after the passage and approval of this act, unless such restrictions shall, prior to the expiration of said period, be removed by act of Congress." The effect of this section if valid, upon which we do not at this time pass, is to disqualify the full-blood Indian from alienating or disposing of the lands allotted to him within said period of 25 years. The evident purpose of this provision was to deny for said period to certain Indians, to wit, the full-blood Indians, power to alienate or dispose of certain of his property, to wit, the lands allotted to him, not the lands inherited by him. It is contended, secondly, that the restrictions imposed by said section 16 of the Supplemental Creek Agreement are extended by the last sentence of section 22 of said act which reads:

"All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe." We cannot concur in this contention. The first two sentences of section 22 have for their purpose and accomplish, subject to the limitations of the last sentence of the section, the removal of the restrictions upon adult heirs of any deceased Indian and authorized minor heirs, when there are both adult and minor heirs of a decedent, to join in a sale of inherited lands by guardian duly appointed by the proper United States court of the Indian Territory, and, in case of the organization of a state, then by the proper court of the state. The effect of those two sentences without the last sentence of the section would have been to repeal section 16 of the Supplemental Creek Agreement, in so far as it imposed a restriction upon the power of adult heirs to alienate inherited lands. Without the last sentence of the section, Marchie Tiger prior to the expiration of five years after  the approval  of the Supplemental Creek Agreement could have conveyed the lands inherited by him from his deceased relatives, and could have given good title to his grantee without the approval of the Secretary of the Interior; but the last sentence of said section 22 is in the nature of an exception or a proviso to the preceding section of the paragraph, and, but for it, said section would have resulted in the removal of all restrictions as to Indian adult heirs, and such heirs would have had the power to convey their inherited lands without the approval of anyone being required, and does remove such restrictions as to all adult heirs of mixed blood. The first sentence of the section removes restrictions existing as to adult heirs within the five-year period following the approval of the Supplemental Creek Agreement, and does not remove restrictions upon the alienation after such period for the reason that none existed. The adult heir after the expiration of said period of five years would have had the power to sell his inherited lands if the act of April 26, 1906, had never been passed. The purpose of a proviso or an excepting clause is to except from the preceding part of the act something that other-

wise would have been embraced therein, or to in some manner modify that which has been embraced within the preceding part of the act; and in construing a proviso or an excepting clause the same should be construed with reference to the preceding part of the act or clause to which it is attached, and, in the absence of language in the proviso or excepting clause giving it a more extended application than to the subject dealt with in the preceding clause or part of the     section of the act, it will be restricted to the subject dealt with therein.   Lewis' Sutherland, on Statutory Construction (2d Ed.) par. 351.   *McRae, Adm'r, v. Holcomb,* 46 Ark. 306; *Bragg v. Clark.* 50 Ala. 364.

The only subject dealt with by the first part of section 22 is the right of adult heirs of any deceased Indian of either of the Five Civilized Tribes to convey allotted lands.   In other words, it was intended by the first sentence of said section to give to such adult heirs of deceased members of the Five Civilized Tribes who had not theretofore had the right to convey their inherited lands the right to convey same. As applied to the members of the Creek Tribe of Indians, the right to convey the lands had been denied the allottees and their heirs for said period of five years, except such conveyance be made with the approval of the Secretary of the Interior, and the effect of the first part of this section as to said Creek Tribe of Indians is to remove this restriction upon their power of alienation of their inherited lands, and it is to this general subject of legislation that the last sentence of the paragraph forms an exception or a proviso   in so far as said act applies  to the   Creek Tribe of Indians.   Without it, any adult heir of the Creek Tribe of Indians could have conveyed his inherited land prior to the expiration of said period of years just as he could have conveyed it after the expiration of said period under section 16 of the Supplemental Creek Agreement, but by the last sentence a limitation was placed upon the scope of the first sentence of the section to the extent that heirs who are full-blood Indians could convey only as had been provided by section 16 of the Supplemental Creek Agree-

ment, to wit, with the approval of the Secretary of the Interior. The effect of the first part of the section is to remove the restrictions upon the power of the adult heirs to sell prior to the expiration of five years from the ratification of the Supplemental Treaty, but it neither added to nor detracted from the right of such heirs to sell after the expiration of such five-year period, for under their patent and the laws and treaties under which the patent had been issued to them they would have had that right without further legislation, and, if the last sentence of the section excepts something from the general effect of the language of the preceding sentences of the section, then it must except the right to convey within said period of five years from certain heirs, which it does when it provides that heirs who are full-blood Indians can convey only subject to the approval of the Secretary of the Interior, which leaves the law as to them just as it was prior to the passage of the act of Congress approved April 26, 1906. The deeds which Marchie Tiger executed were executed to plaintiffs in error subsequent to the expiration of said five-year period. He therefore conveyed to them a good title, and the judgment of the trial court was error.

It has further been argued by the able counsel for plaintiff in error that if the effect of the provisions of the act of April 26, 1906, had been to extend the restrictions on the power of the full-blood Indians to sell their inherited lands for a period beyond the five years, provided in the Supplemental Creek Agreement, such act would have been unconstitutional and void. Under the view we have taken of this case, it is not necessary for us to discuss this proposition, and we refrain from expressing any opinion thereon.

The judgment of the trial court is reversed, and the cause is remanded, with directions to dismiss plaintiff's petition.

All the Justices concur.