# BRADY et al. v. BANK OF COMMERCE OF COWETA et al.

### No. 2818. Opinion Filed November 18, 1913.

### Rehearing Denied February 28, 1914.

### (138 Pac. 1020.)

1. **VENDOR AND PURCHASER—Contract of Sale—Implied Warranty—Marketable Title.** In the absence of an express provision indicating the character of the title provided for by a contract of sale of real property, the implication is that a good or marketable title in fee simple is intended in all executory contracts.

2. **SAME.** Such implied warranty only exists so long as the contract remains executory; i. e., until delivery of the deed.

3. **COVENANTS—Construction—Renewal Agreement—What Law Governs.** An executory contract for the sale of land in the Indian Territory was made in said territory July 29, 1907, which by its terms expired prior to November 16, 1907 (the day that Oklahoma was admitted into the Union as a State). The contract, a deed, and part payment were then placed in escrow, but nothing was done toward performing the conditions of the sale agreement until December 4, 1907, when a new contract, extending the time of performance, was signed by the parties. Within a short time thereafter, the deed and consideration therefor, including two certain notes, were delivered. **Held,** in an action to recover on said notes, where the makers set up as a defense broken covenants of warranty, that the covenants contained in the deed should be construed, and the purchaser's rights thereunder determined, by the law in force when the second contract was made and the deed delivered.

4. **SAME—Covenants of Seisin—"Good Right to Convey"—Breach.** Under section 1202, Comp. Laws 1909 (Rev. Laws 1910, sec. 1162), a warranty deed made in substantial compliance with the provisions of said act shall be deemed a covenant on the part of the grantor that at the time of making the deed he was legally seised of an indefeasible estate in fee simple of the premises and had a good right and full power to convey the same.

5. **SAME.** "Covenants of seisin" and "good right to convey" are synonymous and, if broken at all, are broken when made, and an actual eviction is unnecessary to consummate the breach.

6. **VENDOR AND PURCHASER—Foreclosure of Purchase-Money-Mortgage—Defense—Breach of Covenants.** In such cases the purchaser in possession, in a suit to foreclose a mortgage given for the purchase money, may defend against a recovery thereon and set up broken covenants of seisin, provided the deed be such as contemplated by the statute above mentioned.

(Syllabus by Sharp, C.)

*Error from District Court, Okmulgee County;*
*W. L. Barnum, Judge.*

Action by the Bank of Commerce of Coweta against A. C. Brady, Maude 'Brady, and R. E. Cook. From judgment for plaintiff and for defendant R. E. Cook, defendants A. C. Brady and Maude Brady bring error. Reversed and remanded.

*Frank F. Lamb,* for plaintiffs in error.

*Owen & Stone,* for defendants in error.

Opinion by SHARP, C. On July 29, 1907, the Coweta State Bank and defendant A. C. Brady entered into a written contract whereby the former agreed to sell the latter 160 acres of land lying in the Western district of the Indian Territory for $2,400 on the following conditions:

"That the party of the second part will deposit with the Bank of Commerce of Coweta, Ind. T., five hundred dollars (500) as a part payment for said tract of land. Party of the first part agrees to place with said bank a warranty deed for the above-described land. The above deed and deposit is to be held by the Bank of Commerce of Coweta, Ind. T. Party of the first part agrees with the party of the second part to clear up the title of the aforesaid tract of land to the satisfaction of the party of the second part, or his attorney, and, when the title is acceptable, party of the second part agrees to place in the Bank of Commerce of Coweta, Ind. T., the balance of the purchase price of said land, $1,900, to be turned over to the Coweta State Bank, and the Bank of Commerce is to turn the deed of the aforesaid described tract of land to the party of the second part: Provided, however, if the said party of the first part fails to clear up the title to the said tract of land within ninety days, the party of the second part may withdraw his money deposited with this contract, and if the party of the second part fails, at the expiration of ninety days, to fulfill this contract, the party of the first part may withdraw his deed from the said bank, and this contract shall be null and void."

Contemporaneous with the execution of this contract, the bank executed its deed, which, together with $500 put up by Brady, was placed in escrow with the Bank of Commerce. The terms of the contract, other than the escrow agreement, not

having been complied with by either party within the time named in the agreement, the parties thereto on December 4, 1907, entered into a second written agreement, which referred to the former contract and the respective deposits made with the depositary, the Bank of Commerce. This latter agreement referred particularly to certain valuable improvements that the purchaser desired to place on the land, and provided a means whereby the amount and value thereof might be determined, provided either that the deed to the land was not perfected or that it was not delivered within a reasonable time. It was further agreed that the seller would make every effort to clear the title to the land, and for the depositary to deliver the deed within 30 days therefrom if possible.

The deed deposited was a general warranty deed, containing no special covenants of warranty. On or about January 1, 1908, this deed was delivered to Brady, who in turn executed to the Coweta State Bank his note in the sum of $1,000, due and payable three years from date, and further executed to the defendant R. E. Cook his note in the sum of $900, due and payable two years after date. Both notes were secured by a mortgage on the land sold Brady by the bank. The makers of the notes having defaulted in the payment of interest, foreclosure suit was instituted by the then holder of said $1,000 note, the Bank of Commerce, the depositary named in the original escrow agreement. The defendant Cook filed a cross-petition and prayed judgment on his note and a foreclosure of the mortgage securing the same. Trial being had, personal judgment was rendered against the Bradys, and a decree of foreclosure entered.

Among other defenses pleaded by the defendants, the Bradys, was a failure of consideration, in that the title to the land attempted to be conveyed had wholly failed. The land was originally allotted to William Francis, a citizen by blood of the Creek Nation, who died April 6, 1905. The Coweta State Bank, it seems, obtained whatever title it may have had through a conveyance by one Mack Francis, represented to be the sole surviving heir at law of William Francis, deceased. It was further claimed, and there was evidence offered tending to show, that,

at the time the said Mack Francis conveyed said lands, he was not the sole surviving heir of his father, but instead one of three living children, and that, in addition thereto, said grantor was, on the date of his said conveyance, a minor under 21 years of age. All evidence tending to show these facts was excluded by the court, and the court's action therein is assigned as error.

The theory upon which the plaintiff and the defendant Cook proceeded was that, the Bradys neither having pleaded nor proved an eviction by title paramount, the makers of said notes could not defeat a recovery thereon, in an action by the assignee of the vendor; that, being in possession of the lands described in the deed, the covenant of warranty contained therein was not broken. Numerous Arkansas decisions are cited in support of this contention, among which are the following: *Logan v. Moulder,* 1 Ark. 313, 33 Am. Dec. 338; *Bird v. Smith,* 8 Ark. 369; *Walker v. Johnson,* 13 Ark. 524; *Collier v. Cowger,* 52 Ark. 322, 12 S. W. 702, 6 L. R. A. 107; *Thompson v. Brazile,* 65 Ark. 495, 47 S. W. 299.

Conceding the rule in that state to be that, if in a conveyance there be no covenant other than of warranty of title, a purchaser in possession has neither cause of action nor legal excuse to withhold payment until he has been evicted, in the absence of either fraud or misrepresentation affecting the title, or situation of the property amounting to fraud, we must first determine whether the Arkansas rule of decision in force in the Indian Territory prior to November 16, 1907, furnishes the law by which we are to determine the respective rights of the parties, and, if not, then we must ascertain what is the controlling law, for it must be admitted that the right of a purchaser through a general warranty deed, without special covenants of warranty, under the Arkansas law, differs materially from those rights that follow under the same form of deed under our statute.

We have been unable to find any authorities directly in point, but a close and careful study of the written contracts impels us to the belief that the parties thereto contemplated a good or marketable title in fee simple. But whether the contracts, interpreted in the light of the surrounding facts and of the law at

the time in force, can be so construed, it is a very general rule that, in the absence of an express provision indicating the character of title provided for by a contract of sale of real property, the implication is that a good or marketable title in fee simple is intended in all executory contracts. *Yeates et al. v. Pryor,* 11 Ark. 58; *Witter v. Biscoe,* 13 Ark. 422; *Vaughan v. Butterfield,* 85 Ark. 289, 107 S. W. 993, 122 Am. St. Rep. 31; *Durham v. Hadley,* 47 Kan. 73, 27 Pac. 105; *McPherson et al. v. Kissee,* 239 Mo. 664, 144 S. W. 410; *Vought v. Williams,* 120 N. Y. 253, 24 N. E. 195, 8 L. R. A. 591, 17 Am. St. Rep. 634; *Meyer v. Madreperla,* 68 N. J. Law, 258, 53 Atl. 477, 96 Am. St. Rep. 536; 39 Cyc. 1442.

With regard to deeds, where the title passes by delivery, it is provided by section 1214, Comp. Laws 1909 (Rev. Laws 1910, sec. 1175):

"Every estate in land which shall be granted, conveyed or demised by deed or will shall be deemed an estate in fee simple and of inheritance, unless limited by express words."

The original contract, on the advent of statehood, had not been complied with by either party, but on the other hand remained dormant. At that time either was free to be relieved of its terms; the seller by recalling his deed, the purchaser by withdrawing his deposit. But neither had elected so to do, and on the 4th day of December following they entered into a new agreement, executed with all the formalities of the original, but which referred to the deposits theretofore made under the old contract. Under this latter agreement the seller obligated itself to perfect the deed within a reasonable time, and to clear up the title to the land, and "have Bank of Commerce deliver title within 30 days, if possible." The record does not show that anything had been done on the date of the contract toward perfecting the seller's title to the land. The deed remaining in escrow, and the conditions of the escrow agreement not having been complied with, no title had passed to the purchaser. Comp. Laws 1909, secs. 1091, 1092 (Rev. Laws 1910, sec. 943).

While the contract of July 29, 1907, required only that the bank deposit a warranty deed, it was further provided that said

bank was to clear up the title to the satisfaction of the purchaser or his attorney, obviously meaning that the warranty deed contemplated by the parties was to be executed, either when the title was cleared up, or was to be such as would 'fully protect the purchaser against the existing defects that rendered the close of the transaction, at the time, impracticable. While the Arkansas laws were in force, the purchaser did not accept the deed, but after the execution of the new agreement, and when the present laws, which we have seen more fully protected the purchaser, became effective, the deed was accepted and the cash paid and the notes executed and delivered. The undertaking as renewed was to furnish a warranty deed. The second contract being made, and the deed delivered and accepted while the Oklahoma laws were in force, it will be presumed, in the absence of proof to the contrary, that the parties contracted with reference to the laws in force at the time. The rule is general that the laws, in existence when a contract in regard to real estate is made, enter into and become a part of such contract. *Simpson et al. v. Hillis,* 30 Okla. 561, 120 Pac. 572, Ann. Cas. 1913C, 227; *Phinney v. Phinney,* 81 Me. 450, 17 Atl. 405, 4 L. R. A. 348, 10 Am. St. Rep. 266; *Brine v. Hartford Fire Insurance Co.,* 96 U. S. 627, 24 L. Ed. 858. At the time of the renewal of the contract, the laws in force when negotiations were begun had become obsolete, and, if such laws were to control, an express provision to that effect should have been incorporated in the second contract, or by express words the title should have been limited in the deed. Under the original contract, only the deposits with the depositary had been made. Not having been performed within the time named or within a reasonable time thereafter, by the efflux of time either party could have withdrawn from its terms without incurring, so far as the record discloses, any liability. By the subsequent agreement, the purchaser went into possession and erected on the lands improvements of the alleged value of $2,000, so that what was done toward a carrying out of the conditions named in the escrow agreement was done under the renewed or second agreement, extending the time of performance. Our conclusion, therefore, is that the laws of Oklahoma, and not of Arkansas, must govern.

Under section 1202, Comp. Laws 1909 (section 1162, Rev. Laws 1910), it is provided:

"A warranty deed made in substantial compliance with the provisions of this chapter shall convey to the grantee, his heirs or assigns, the whole interest of the grantor in the premises described, and shall be deemed a covenant on the part of the grantor that at the time of making the deed he is legally seised of an indefeasible estate in fee simple of the premises and has good right and full power to convey the same; that the same is clear of all incumbrances and liens, and that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession thereof, and will defend the title thereto against all persons who may lawfully claim the same; and the covenants and warranty shall be obligatory and binding upon any such grantor, his heirs and personal representatives, as if written at length in such deed."

In *Faller v. Davis et al.*, 30 Okla. 56, 118 Pac. 382, Ann. Cas. 1913B, 1181 (cited in *Joiner v. Ardmore Loan & Trust Co.*, 33 Okla. 266, 124 Pac. 1073), it was held that covenants of seisin and good right to convey were synonymous, and if broken at all were broken when made, and an actual eviction was unnecessary to consummate the breach. The rule there announced is one that obtains in the great majority of American jurisdictions, where covenants of seisin and of good right to convey are considered as covenants *in praesenti* and broken, if at all, as soon as made, if the convenantor is not legally seised of the property sought to be conveyed. An extended note to the above case reviews at length the authorities, both in this country and in England and Canada, rendering unnecessary any further discussion of the question.

The deed through which defendants claim title meets fully the requirements of the statute then in force. If, therefore, the Coweta State Bank was not legally seised of an indefeasible estate in fee simple of the lands and did not have a good right and full power to convey the same, the implied covenant of seisin attaching under the statute was broken, and the purchasers, in a suit on the notes, had the right, as a defense thereto, to plead

a failure of consideration, without an eviction from the premises. Upon the vendor's title must ultimately rest the right to recover on these notes.

The case, we think, was decided upon a mistaken notion as to the applicatory law, and for that reason the judgment of the trial court should be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.