## SHIPPEY *et al.* v. BEARMAN.

No. 6718.  Opinion Filed April 18, 1916.

Rehearing Denied May 9, 1916.

(157 Pac. 302.)

1. **CONTRACTS—Joint Adventure — Illegal Contracts — Contribution Between Parties.** B., who was associated with defendants and others in joint ventures in the buying and selling of land, acting for himself and as the authorized agent of his associates, in good faith bought and resold a certain tract of Indian land, giving a deed with covenants of seisin and general warranty. The title was one of that class subsequently held void by the decision in **Tiger v. Western Investment Company,** 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738. After said decision was announced B. purchased the title of claimants to the land and demanded contribution to the expense thereof from his associates. **Held:** (a) That under such circumstances it was not necessary that B.'s grantee should have been evicted and suit brought upon the warranty before B. was justified in acting to protect his warranty; (b) that, having so acted, he could enforce equitable contribution for the actual expenditures therefor; (c) B. being the general agent of all parties in all the land transactions handled in the joint enterprise, in order for him to enforce contribution, it was not necessary to prove that the titles bought by him were those of actual owners of the land, but only that he in good faith bought titles which he believed were those of the actual owners of the land. especially in view of the original contract of the parties. which provided that they were to bear all losses according to their respective interests; (d) that this action for contribution was not one based upon acts in contravention of the public policy of the United States.

2.    **FRAUDS, STATUTE OF—Trusts—Statute of Uses—Operation and Effect—Part Performance.** The statutes of frauds or of uses and trusts have no application where the agreements have been completely performed as to the part thereof which comes within the statute, and the part remaining to be performed is merely a payment of money, the promise to do which is not required to be in writing.

3.    **SUFFICIENCY OF EVIDENCE.** Evidence examined, and **held** to support the judgment.

(Syllabus by Burford, C.)

*Error from Superior Court, Tulsa County;*
*M. A. Breckenridge, Judge.*

Action by Jacob A. Bearman against Josiah N. Shippey and others for equitable contribution. Judgment for plaintiff, and defendants bring error. Affirmed.

*J. S. Severson* and *W. B. Williams,* for plaintiffs in error.

*F. B. Righter,* for defendant in error.

Opinion by BURFORD, C. Jacob A. Bearman instituted his action in the superior court of Tulsa county, alleging that he had theretofore associated himself with J. N. Shippey, John M. Vandiver, Chas. S. Robertson, F. B. Righter, and L. F. Copeland for the purpose of buying and selling lands, and that it was agreed between all of the parties that the titles to the land purchased should be taken in the individual name of some one of the parties, to be held in trust for the use and benefit of all of said parties, to be sold by the consent of all, the profits and losses of said transactions to be shared in by all of the parties, according to certain respective interests which were set up in the petition; that pursuant to such arrangement a large number of tracts of land were purchased at a judicial sale held by T. C. Harrell as trustee in bankruptcy of the estate of the Western Investment Company,

a bankrupt, and title to said land was taken in the name of plaintiff, Bearman; that thereafter one of said tracts of land was resold, the plaintiff executing his warranty deed therefor; and that the profits of the transaction were divided according to the respective interests set out in the petition; that thereafter it developed that the title to the land sold was one of those involved in principle in the decision in *Marchie Tiger v. Western Investment Co. et al.*, 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738, and that the plaintiff's title to said tract of land was void; that thereupon the plaintiff purchased certain outstanding titles to the land in order to avoid a liability upon his warranty, and demanded from all of his associates contribution toward the expense of procuring said titles, in the *pro rata* shares in which they were interested in the joint enterprise; that Righter and Copeland paid, but the other three defendants had refused so to do. It was alleged that in the conduct of the land transactions the plaintiff was vested with the entire management, except that the consent of all was necessary to a sale. There was a demurrer to the petition, which was overruled, and thereafter the defendants answered: First, by a general denial; second, by setting up that prior to the admission of the state there had existed a corporation known as the Broken Arrow Loan & Investment Company, organized, among other things, for the purpose of dealing in lands; that upon the admission of the state the stockholders became doubtful as to the right of said corporation under the laws of this state to engage in the buying and selling of lands, and that the transactions set out in plaintiff's petition arose by reason of such doubt, and that all agreements in relation thereto were merely as a cover for the dealing in land by said corporation, were verbal, and that the pro-

ceeds of said transactions were paid into the treasury of the Broken Arrow Investment Company, a corporation. It was further alleged that prior to the institution of this suit the defendants had parted with their interest in said corporation to the plaintiff, and had a full and final settlement of all transactions, and that the corporation subsequent to the institution of the instant suit had been dissolved by decree of the district court of Tulsa county. By way of cross-petition defendants alleged there were certain funds which were unaccounted for and asked an accounting and a recovery of their proper shares. A reply in the form of a general denial was filed by the plaintiff. A trial was had to the court and a general judgment rendered in favor of the plaintiff and against the defendants. Motion for new trial was filed and overruled, and the cause brought here for review.

It is urged, first, that there can be no recovery for the plaintiff upon the ground that the petition did not in terms state that the agreement in relation to the buying and selling of this land was in writing, and that therefore it must be assumed that it was not in writing, and that any trasactions under it were void, as in contravention of the statute of frauds. The petition alleged that there was an agreement, without stating whether it was or was not in writing. This, however, does not render the petition subject to a general demurrer, but might have been a cause for a motion to make more definite and certain. No such motion having been made, we should not import into the petition an allegation or supposition that the agreement was verbal. Upon a trial it was proved satisfactorily, we think, that there was an actual agreement in writing. The agreement itself was not introduced, but there was testimony that the agreement as to this par-

ticular land had been destroyed. The testimony further tended to show that in relation to each tract of land which was bought the parties entered into a trust agreement, that each was made upon the same form, and that said form provided, among other things, as follows:

"Whereas, J. A. Bearman, J. N. Shippey, C. S. Robertson, F. B. Righter, and L. F. Copeland, all of Broken Arrow, Oklahoma, have mutually agreed to associate themselves together, as hereinafter appears, for the purpose of buying, holding, selling, and dealing generally in lands in the State of Oklahoma, and of borrowing and lending money in the conduct of said business."

Then follows a statement of the respective interests of the parties in the transactions, and then the provision:

"That the respective interests of said parties in the purchase, holdings, sales, and dealings in lands, and in the issues, proceeds, and profits arising out of said transactions, shall be determined according to the respective contributions made by them as above set forth, and the losses, if any, shall be borne by them respectively according to the interests they may have in said business as above set forth, and that said parties have mutually agreed that the legal title to all lands purchased in the course of said business shall be conveyed to some one of them, and shall be held by him in trust for the parties above named, as well as for himself, according to their respective interests in said business, as above set forth."

This agreement in writing, in our judgment, was clearly sufficient to satisfy both the statute of frauds and the statute of uses and trusts, and takes that question out of the case. But, even if it be conceded that the written agreement was not proved, it must be remembered that this transaction was not one to enforce the sale of any land, or to compel a conveyance by the trustee to the

*cestui que trust,* but was for a contribution arising out of an alleged necessary expenditure in relation to one of the transactions of the association.

In *Logan v. Brown,* 20 Okla. 346, 95 Pac. 441, 20 L. R. A. (N. S.) 298, this court said:

"But we are not to deal with the situation suggested by either proposition above mentioned, but a situation where the grantee, under a parol contract to sell, has actually fulfilled that portion of the contract within the statute of frauds, and nothing remains to be enforced by a court but that part of the contract that never was in the statute, and against which it does not operate. Volume 29 of Am. & Eng. Ency. of Law, p. 832, under the title of 'Verbal Agreements' and the subtitle relating to lands, holds: 'The statute of frauds has no application where the agreement has been completely performed as to the part thereof which comes within the provisions of the statute, and the part remaining to be performed is merely the payment of money or the performance of some act the promise to do which is not required to be put in writing."

And in the syllabus thereto this court said:

"The provisions of the statute of frauds or of uses and trusts have no application where the agreement has been completely performed as to the part thereof which comes within the statute, and the part remaining to be performed is merely a payment of the money, the promise to do which is not required to be in writing."

It is also urged that the transactions in relation to the land in question were in contravention of the laws of the United States and of the public policy thereof, and that therefore no action can be predicated thereon. But the fallacy of this contention is that the suit in question is not to enforce any deed to restricted Indian lands, but is to enforce an equitable contribution arising out of the fact

that an invalid title had been secured and was to be made good. There was no agreement that the parties should deal in invalid titles, and it is not to be assumed that they intended to do so, especially in view of the fact that the testimony clearly shows that this land was purchased while the decision of this court in *Western Investment Company v. Tiger*, 21 Okla. 630, 96 Pac. 602, holding titles of this class valid, was in force and effect, and that it was only after the decision of this court in that case was reversed by the Supreme Court of the United States that it was known that the title to the land was void. We are of the opinion, therefore, that it cannot be fairly said that this is a suit predicated upon any contract to deal in lands contrary to the statutes or public policy of the United States.

It is next contended that there was no liability upon the plaintiff, Bearman, to undertake to make good his warranty until there was an eviction of his grantee, which was not proved, and that therefore there could be no contribution until Bearman was compelled to make good his warranty. It appears from the record that the deed was one of general warranty, and contained a covenant of seisin, and under our statutes the covenant of seisin, the grantor's title being absolutely void, was broken when made, and the legal obligation to pay then arose regardless of eviction. *Faller v. Davis et ux.*, 30 Okla. 56, 118 Pac. 382, Ann. Cas. 1913B, 1181; *Brady et al. v. Bank of Commerce*, 41 Okla. 473-479, 138 Pac. 1020, Ann. Cas. 1915B, 1019.

"To entitle one to contribution the payment must be compulsory in the sense that the party paying was under legal obligation to pay, but according to the weight of authority it is not necessary to make the payment invol-

untary that suit should have been instituted against the person seeking contribution." (9 Cyc. 798.)

See, as analogous, *Carson v. Broody,* 56 Neb. 648, 77 N. W. 80, 71 Am. St. Rep. 691; *Haverford Loan Ass'n v. Fire Ass'n,* 180 Pa. 522, 37 Atl. 179, 57 Am. St. Rep. 657; *Stevens v. Reynolds,* 143 Ind. 467, 41 N. E. 931; 52 Am. St. Rep. 422; 7 A. & E. Ency. Law, 354, and notes.

Furthermore, the evidence strongly tended to show that Bearman was fully authorized to act for all parties in any way he saw fit in relation to these land transactions. Such being the case, certainly, if he made an honest effort to save a loss upon an undisputed liability, his associates ought in equity and good conscience to contribute to the expense thereby incurred.

In *Security Ins. Co. v. St. Paul Ins. Co.,* 50 Conn. 233, 244, it is said:

"When several persons desire to bring about the same result, one which will be of pecuniary advantage to each, and agree to unite and make common cause each with all others in the undertaking, and join in the appointment of the same agent for the accomplishment of their purpose, as between themselves, each is bound to contribute his proportion to be determined by the number uniting, or by a rule established by themselves, or by such equities as may arise from the circumstances attending the transaction. And, if one of them pays, either upon the judgment of a court or voluntarily, a claim justly due from all, each of the others is under obligation so to contribute to his repayment as that the final result shall be that each solvent person has paid his proportion."

As to the authority of Bearman, he testified as follows:

"Q. Bearman, what authority did the defendants give you in connection with all of their trades, all land trades,

if any? A. Why, I always had authority to make any kind of a land trade that I deemed was beneficial. I think they all had confidence in me enough to know that I would always make the best trade I could for them. I had always done that."

The defendant Shippey also testified:

"He was running things anyhow, and, if we made any objection, I don't remember it now. Q. What do you mean by him running the thing? What would he do? A. He took the matter—he had the matters entirely in his own hands, and we submitted to his management."

The general course of transactions, as detailed in the testimony, also shows that, with the consent of the defendants, Bearman acted for all in relation to the transactions involving the land which they held. The evidence clearly showed that the land in question had been sold for $4,000, and that the plaintiff procured the outstanding titles thereto for less than one-half of the amount, and that claimants to the title had already suggested the question of invalidity thereof at the time plaintiff procured such outstanding titles. Under these circumstances we hold that plaintiff, Bearman, was authorized, not only for himself, but as agent for the other defendants, to procure the outstanding titles necessary to avoid a suit upon his warranty, and that it was not necessary for him to await the eviction of his grantee; it not being disputed that the title under which he originally conveyed was absolutely void.

Plaintiffs in error further urge that the transactions involved were corporate, and not individual, and that their liability ceased when they sold their stock in the corporation. It is further argued that there was a complete adjustment of all the transactions between them, and that plaintiff owed them upon an accounting. It suffices to say

that these questions involved issues of fact which were disputed at the trial. The superior judge found for the plaintiff, and upon a review of the evidence we agree with him.

It is finally urged that there was error in the admission of testimony, in that a certain census card, part of the records of the Dawes Commission, was introduced in evidence to prove that one Sukey Kelley was dead, and that certain parties from whom plaintiff obtained deeds to the land in question were the heirs of said Sukey Kelley, deceased. In our judgment, this whole testimony was immaterial, and the admission or rejection of it could not constitute reversible error. We have already referred to the authority given Bearman, and under it we hold that as the agent of the defendants and for himself he had complete control of the land transactions, and any expenditures he made in attempting to purchase these outstanding titles was binding upon them, and that it was immaterial whether he acquired the right title or the wrong title, so that the expenditures were made in good faith, and for the purpose of protecting their interest. 6 R. C. L. 1040.

Finding no error in the record, the judgment is affirmed.

By the Court: It is so ordered.